# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against Crime-Institute : <br>
for Legislative, Legal, and Education : <br>
Action, Joshua First, Howard Bullock, : <br>
and Michelle Stolfer for the Estate of : <br>
Kim Stolfer : <br>
                     : <br>
          v. :   No. 1523 C.D. 2024 <br>
                     : <br>
City of Harrisburg, Mayor Eric : <br>
Papenfuse, and Police Chief : <br>
Thomas Carter : <br>
                     : <br>
Appeal of: Firearm Owners Against : <br>
Crime-Institute for Legislative, Legal, : <br>
and Education Action, Howard Bullock, : <br>
Joshua First, and Michelle Stolfer :   Argued: December 8, 2025

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge <br>
             HONORABLE LORI A. DUMAS, Judge <br>
             HONORABLE MATTHEW S. WOLF, Judge

OPINION BY <br>
JUDGE WOLF                              FILED: January 15, 2026

Howard Bullock, Joshua First, and Michelle Stolfer (Individual Appellants) and Firearm Owners Against Crime–Institute for Legislative, Legal, and Educational Action (FOAC–ILLEA) (collectively, Appellants) appeal to this Court from a September 27, 2024 order of the Court of Common Pleas of Dauphin County (trial court) that, in relevant part, dismissed Appellants' Amended Complaint challenging the legality of certain provisions contained in the City of Harrisburg's (City)

Ordinance Section 3-355.2 (Emergency Ordinance).[1]  Appellants argue that the trial court erred by misapplying the proper legal standard to establish standing and by failing to recognize taxpayer standing under Pennsylvania law.  Because Appellants' substantial, direct, and immediate interest in the outcome of this litigation accords them standing, we reverse and remand to the trial court for further proceedings.

---

[1] In relevant part, the Emergency Ordinance provides:

>    A. Whenever the Mayor declares that a state of emergency exists, the following emergency prohibitions shall thereupon be in effect during the period of said emergency and throughout the City:
>
>    (1) The sale or transfer of possession, with or without consideration, the offering to sell or so transfer and the purchase of any ammunition, guns or other firearms of any size or description.
>
>    (2) The displaying by or in any store or shop of any ammunition, guns or other firearms of any size or description.
>
>    (3) The possession in a public place of a rifle or shotgun by a person, except a duly authorized law enforcement officer or person in military service acting in an official performance of his or her duty.
>
>    B. The Mayor may order and promulgate all or any of the following emergency measures, in whole or in part, with such limitations and conditions as he or she may determine appropriate; any such emergency measures so ordered and promulgated shall thereupon be in effect during the period of said emergency and in the area or areas for which the emergency has been declared:
>    . . . .
>    (8) The prohibition of the possession in a public place or park of weapons, including but not limited to firearms, bows and arrows, air rifles, slingshots, knives, razors, blackjacks, billy clubs, or missiles of any kind.

City Code § 3-355.2. Although Appellants generally seek relief with respect to the entirety of the State of Emergency Ordinance, including all of subsection (B), we have reproduced only that portion of subsection (B) that relates specifically to firearms, consistent with Appellants' underlying legal theories.

## I. Background

The underlying facts in this matter are undisputed. Appellant FOAC-ILLEA is a statewide nonpartisan political action committee whose stated purpose is to defend what it views as the constitutional and statutory rights of lawful firearm owners. The three Individual Appellants are all FOAC-ILLEA members and holders of Pennsylvania licenses to carry firearms. Reproduced Record (R.R.) at 25a, 39a, 72a.

Through a Complaint filed on January 16, 2015, Appellants sought declaratory and injunctive relief from five provisions of the City's Codified Ordinances (City Code), which are as follows:

- Section 3-345.1, adopted in 1951, which prohibits the possession of firearms by unaccompanied minors (Minors Ordinance);

- Section 3-345.2, adopted in 1821, which restricts the discharge of firearms to within accredited, approved educational facilities (Discharge Ordinance);

- Section 3-345.4, adopted in 2009, which requires firearm owners to report lost or stolen firearms to law enforcement within 48 hours of their discovery of the loss or theft (Lost/Stolen Ordinance);

- The aforementioned Emergency Ordinance, adopted in 1969; and

- Section 10-301.13, adopted in 1905, which prohibits the possession, use, and discharge of firearms within the City's parks (Parks Ordinance).

*See Firearm Owners Against Crime v. City of Harrisburg* (*Papenfuse II*), 261 A.3d 467, 470-71 (Pa. 2021). Specifically, Appellants contended that the five provisions violated the United States Constitution's and Pennsylvania Constitution's guarantees of the individual right to bear arms.[2] Appellants further argued that the

---

[2] *See* U.S. CONST. amend. 2; PA. CONST. art. I, § 21.

3

provisions were expressly preempted by Section 6120(a) of the Pennsylvania Uniform Firearms Act of 1995 (UFA), which provides that no "county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth." 18 Pa.C.S. § 6120(a).

The City initially removed the action to the United States District Court for the Middle District of Pennsylvania, which promptly remanded the matter to the trial court for lack of subject matter jurisdiction. *See Firearm Owners Against Crime v. City of Harrisburg*, No. 1:15-cv-0322, 2016 WL 1162283 (M.D. Pa. Mar. 24, 2016) (unpublished). Back in the trial court, the City filed preliminary objections, asserting (1) that Appellants lacked standing to bring the action, (2) that Appellants failed to state a claim because the ordinances do not infringe on individual rights to bear arms, (3) that Appellants failed to state a claim because the ordinances are not preempted by the UFA, and (4) that then-Mayor Papenfuse and Chief Carter were immune from suit as high public officials. In an October 9, 2018 opinion, the trial court sustained the City's preliminary objections and dismissed the Complaint without prejudice, reasoning that Appellants had not pled any facts to show that they were harmed by any of the subject ordinances, rendering the harm alleged entirely speculative.

The trial court also granted Appellants leave to amend their complaint, but Appellants instead appealed to this Court. We reversed the trial court's order as to Appellants' challenge of the Minors, Discharge, Lost/Stolen, and Parks Ordinances. *See Firearm Owners Against Crime v. City of Harrisburg* (*Papenfuse I*), 218 A.3d 497, 515-516 (Pa. Cmwlth. 2019) (en banc), *aff'd*, 261 A.3d 467 (Pa. 2021). However, we agreed with the trial court that the Emergency Ordinance "d[id] not

4

currently impose any duty on the Individual Plaintiffs or any restriction on their ability to use or possess firearms within the City," and that Appellants thereby lacked standing to challenge it. *Id*. at 509. Dissenting in part, Judge McCullough concluded that Appellants should be permitted to maintain their action against the Emergency Ordinance in addition to the other four provisions, reasoning that Appellants should not "be forced to wait until another state of emergency is declared until they are deemed to have standing to challenge the [Emergency Ordinance]." *Id*. at 518.

On the City's appeal, our Supreme Court affirmed. *See Papenfuse II*, 261 A.3d at 490. Applying a traditional standing test, the Court examined the question of whether Appellants had a "substantial, immediate, and direct" interest in the outcome of the case, and determined that Appellants' interest met all three of the test's elements. *Id*. at 487-88. Rejecting the City's assertion that the interest was too remote, the Supreme Court held that Appellants had standing to bring the action "before the City enforces the challenged ordinances against them." *Id*. at 470. Because Appellants did not file a cross-appeal from this Court's ruling that they lacked standing to challenge the Emergency Ordinance, the Supreme Court did not address the issue. *See id*. at 476 n.8.

Upon remand, the trial court granted Appellants an opportunity to amend their complaint to allege facts that would support standing to challenge the Emergency Ordinance's legality. In their November 7, 2022 Amended Complaint, Appellants alleged that the Individual Appellants had been present in Harrisburg on three occasions when city officials declared states of emergency. In preliminary objections, the City asserted that Appellants' legal claims were time-barred and, in the alternative, that their factual averments were insufficient to establish standing.

5

At an August 24, 2024 evidentiary hearing, the trial court heard fact testimony from each of the Appellants. R.R. at 15a. Testifying on FOAC-ILLEA's behalf, Mr. Stoker stated that he was the organization's president, a role that requires him to travel to the City from his Pittsburgh home at least once a month. *Id*. at 57a-58a. Mr. Stoker expressed concern that he could be prosecuted for discharging his firearm, which he brings with him into the City regularly, if he needed to defend himself on a City street or in a City park. *Id*. at 64a-65a.

Appellant Bullock testified that he commutes regularly into the City from his suburban home, and that he has held a license to carry firearms since he was 21. *Id*. at 24a-25a. Regarding the challenged City Code provisions, Appellant Bullock testified that he feared prosecution for lawfully using his firearms because of them: "When I come into [the City], if I have to legally defend myself, I could be prosecuted for the discharge of my firearm," he explained. *Id*. at 27a. As for the Emergency Ordinance, Appellant Bullock recalled four occasions since 2011 when the Mayor declared states of emergency in the City (in 2011, 2016, 2020, and 2024) and believed that he could have been subject to prosecution on those occasions. *Id*. at 25a-26a.

Appellant First recalled in his testimony that the 2011 state of emergency was the result of severe flooding in the City and that his own house was inundated at the time. *Id*. at 39a-40a. When Appellant First called the City police to report the presence of outsiders on his flooded street, officers arrived and found persons from outside Dauphin County who had "no good reason for being . . . in a blocked-off, flooded neighborhood." *Id*. at 40a. On cross-examination, Appellant First acknowledged that the officers knew he was carrying firearms but did not cite him for violating any City Code provision. *Id*. at 51a.

6

In its September 27, 2024 order, the trial court permanently enjoined the City from enforcing the Minors, Discharge, Lost/Stolen, and Parks Ordinances on the ground that they were preempted by the Uniform Firearms Act. Appellants' Br., App. A, Order. In an opinion accompanying the order, the trial court explained that the ordinances "are still in effect and continue to affect the rights of the [I]ndividual [Appellants] and the members of [FOAC]." *Id*., Trial Ct. Op. at 7. However, the trial court also ruled that Appellants lacked standing to challenge the Emergency Ordinance. *Id*., Order. In the accompanying opinion, the trial court explained that Appellants had presented "no evidence that the Emergency Ordinance was ever enacted" during recent citywide states of emergency. *Id*., Tr. Ct. Op. at 5. There was also "no evidence," the trial court noted, "that gun sales or possession of guns was ever curtailed" during the past three City-declared states of emergency. *Id*. at 6. The trial court nonetheless noted that, "if the Emergency Ordinance is ever enacted in the [City], it would be preempted by the [Uniform Firearms Act] as it pertains to the regulation of the lawful ownership, possession, transfer, or transportation of firearms." *Id*. at 6 n.8. This appeal followed.[3]

## II. Issues

Appellants contend that the trial court erred as a matter of law by disregarding the legal criteria for "pre-enforcement standing" as it pertains to the Emergency Ordinance. Appellants' Br. at 5. In addition, Appellants argue that the trial court failed to consider the question of their "taxpayer standing" in the matter. *Id*.

In response, the City urges this Court to affirm the trial court's order on the ground that the Emergency Ordinance "has never been enacted or enforced, and

---

[3] Where, as here, a preliminary objection presents a question of law, our standard of review is *de novo* and our scope of review is plenary. *Russo v. Allegheny Cnty*. 125 A.3d 113, 116 n.5 (Pa. Cmwlth. 2015).

therefore has not caused any direct or immediate injury to [Appellants]." City's Br. at 6. The City asserts that Appellants fail to satisfy the criteria for taxpayer standing as defined in *Application of Biester*, 409 A.2d 848 (Pa. 1979).

### III. Discussion

Under a traditional standing analysis, individuals initiating a legal action must show that they are aggrieved by the matter they seek to challenge; in other words, the litigants must show that they have a "substantial, direct, and immediate interest in the outcome of the litigation." *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018) (en banc). The plaintiffs' interest is substantial if it is one that surpasses the common interest of all citizens in procuring obedience to the law; it is direct if it requires a causal connection between the asserted violation and the complained-of harm; it is immediate if the causal connection is neither remote nor speculative. *Id*. Where, as here, the individuals seek standing pursuant to the Declaratory Judgments Act (Act), we recognize the remedial purpose of the Act and that its provisions are thereby to be "liberally construed and administered." 42 Pa.C.S. § 7541(a).

It is now firmly established that the traditional standing test is appropriate when plaintiffs seek pre-enforcement review of legislation. Prior to our holding in *Papenfuse I*, this Court had held that plaintiffs must have violated the ordinances they challenge or have been prosecuted for doing so in order to have standing. *See Nat'l Rifle Ass'n v. City of Phila.*, 977 A.2d 78 (Pa. Cmwlth. 2009); *Nat'l Rifle Ass'n v. City of Pittsburgh*, 999 A.2d 1256 (Pa. Cmwlth. 2010). Overruling those precedents, we explained in *Papenfuse I* that the Individual Appellants "have a substantial interest in the legality of [the] ordinances" because each one "is a lawful gun owner who lives in, works in, or regularly visits the City," and because the

8

challenged ordinances "restrict, to varying degrees, the Individual [Appellants'] lawful use/possession of their firearms while in the City." *Id*. Affirming, our Supreme Court noted that Appellants were forced under the ordinances to choose between complying with the ordinances, "thereby forfeiting what they view as their constitutionally and statutorily protected firearms rights"; violating the ordinances, "thereby risking criminal prosecution"; or to leave the City altogether. *Papenfuse II*, 261 A.3d at 487. To allow such challenges under the traditional standing test was consistent with the principle that courts "do not require citizens to become lawbreakers, nor do [they] require citizens quietly to abdicate their individual rights and submit to legislation that they believe violates those rights." *Id*. at 491 (Wecht, J., concurring).

In this case, Appellants presented testimony that the Individual Appellants are licensed firearm owners who live in, work in, or regularly visit the City. Because they carry their firearms into the City, the Individual Appellants fear prosecution pursuant to the Emergency Ordinance. On appeal to this Court, Appellants maintain that their interest in challenging the Emergency Ordinance is "substantial," "direct," and "immediate," because they must "decide whether to violate the [Emergency Ordinance], forfeit their rights to comply with the ordinances, or avoid the City altogether." Appellants' Br. at 19 (citing *Papenfuse II*, 261 A.3d at 488). That the Emergency Ordinance is not currently enforced and not known to have been enforced is of no moment, Appellants argue, because "the law affords 'standing to plaintiffs to challenge laws *before the laws have been enforced against them* and *before enforcement has been threatened*.'" *Id*. n.9 (citing *Papenfuse II*, 261 A.3d at 489) (emphasis added by Appellants). Appellants further contend that the trial

9

court's definition of pre-enforcement standing would, if followed consistently, impose "a complete bar on all such actions."[4] *Id*. at 22.

We agree with Appellants. While we acknowledge this Court's remark in *Papenfuse I* that the Emergency Ordinance "does not currently impose any duty on the Individual [Appellants] or any restriction on their ability to use or possess firearms within the City," 218 A.3d at 509, we believe that a revision of that conclusion is warranted in light of the testimony given by the Individual Appellants since our decision. Whenever the City chooses to exercise its powers under the Emergency Ordinance's provisions, its actions will place the Individual Appellants in the unenviable position of having to choose between giving up what they view as their right to armed self-defense, risking criminal prosecution, or avoiding the City to the detriment of their professional, economic, and personal interests. To deprive them of an opportunity to challenge the Emergency Ordinance merely because they have not yet been harmed by its provisions would be inimical to the very purpose of pre-enforcement standing. As Justice Wecht noted in his concurrence with the *Papenfuse II* majority, citizens are not required "to become lawbreakers" in order to challenge legislation that they believe violates their individual rights; nor are they compelled to "abdicate" their rights and submit to the harmful legislation. 261 A.3d at 491 (Wecht, J., concurring). Because the denial of standing imposes an untenable

---

[4] Appellants also take issue with the trial court's conclusion that the Emergency Ordinance has never been "enacted," given that an emergency declaration made pursuant to Section 3-355.1 of the City Code "automatically triggers the Emergency Ordinance." Specifically, Appellants refer to the language at Section 3-355.2(a), which provides that, when the Mayor declares a state of emergency, the enumerated prohibitions "***shall*** thereupon be in effect during the period of said emergency and throughout the City." Appellants' Br. at 14 (emphasis added by Appellants).

10

dilemma on Appellants in the event of a citywide state of emergency, we hold that its order constitutes reversible error.[5]

Having concluded that Appellants have standing to challenge the Emergency Ordinance under a traditional standing test, we need not address their additional argument that they have taxpayer standing to bring such a challenge.[6]

## IV. Conclusion

For the foregoing reasons, we reverse and remand to the trial court for further proceedings.

_____

MATTHEW S. WOLF, Judge

---

[5] We acknowledge that our conclusion may seem at first glance to overrule our holding in *Papenfuse I* that Appellants lacked standing to challenge the Emergency Ordinance's legality. Such a change of course would run afoul of the so-called coordinate jurisdiction rule—i.e., that "judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995). An exception to the coordinate jurisdiction rule arises, however, when there is "a substantial change in the facts or evidence giving rise to the dispute in the matter." *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742, 754 (Pa. 2024). In the years since we issued our decision in *Papenfuse I*, Appellants have availed themselves of the opportunity to allege facts under which we can infer that the Emergency Ordinance directly and immediately affects, regulates, or impairs their possession, use, or enjoyment of their firearms. Consequently, the coordinate jurisdiction rule imposes no hindrance to our ruling in Appellants' favor here.

[6] We also note that the City's Brief to this Court focuses on taxpayer standing to the exclusion of all other issues. The City does not appear to have appealed from the trial court's order, though former Mayor Papenfuse and Chief Carter did file a cross-appeal that was later discontinued. *See Firearm Owners Against Crime v. City of Harrisburg* (Pa. Cmwlth., No 1467 C.D. 2024, discontinued March 3, 2025). Accordingly, the City acts as an appellee here only and may not raise its own issues, including regarding traditional standing, at oral argument. *See Nextel Partners v. Clarks Summit Borough*, 958 A.2d 587, 595 n.4 (Pa. Cmwlth. 2008) (deeming an issue raised at oral argument waived because it was not raised in the party's brief to this Court).

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Firearm Owners Against Crime-Institute :
for Legislative, Legal, and Education :
Action, Joshua First, Howard Bullock, :
and Michelle Stolfer for the Estate of :
Kim Stolfer :
                               :
            v.                  :   No. 1523 C.D. 2024
                               :
City of Harrisburg, Mayor Eric :
Papenfuse, and Police Chief :
Thomas Carter :
                               :
Appeal of: Firearm Owners Against :
Crime-Institute for Legislative, Legal, :
and Education Action, Howard Bullock, :
Joshua First, and Michelle Stolfer :

# **O R D E R**

AND NOW, this 15th day of January 2026, the order of the Court of Common Pleas of Dauphin County (trial court) in the above-captioned matter, dated September 27, 2024, is hereby REVERSED. This matter is REMANDED to the trial court for further proceedings consistent with the opinion accompanying this order.

Jurisdiction relinquished.

_____
MATTHEW S. WOLF, Judge